**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 5:23-CR-40-DCR-MAS** |
| **v.** | ) | |
| | ) | |
| **KEYON DACOLBI GRAY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Keyon Dacolbi Gray ("Gray") possessed with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1), possessed a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and is a previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). [DE 1]. The United States orally sought detention under 18 U.S.C. § 3142(f)(1)(B), (C), and (E), [DE 8], and the Court conducted a detention hearing on April 14, 2023. [DE 12]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court grants the United States' motion for detention.

**I.    BRA FRAMEWORK**

Based on the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A) and (e)(3)(B). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden

on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence that no conditions can reasonably assure the defendant's future appearance. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2d Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing

that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply to detention hearings. 18 U.S.C. § 3142(f). The focus is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.

## II.   ANALYSIS

### A.   GRAY'S BACKGROUND

As reflected in the Pretrial Service Report [DE 13], Gray is a twenty-six-year-old man who has spent most of life incarcerated or facing incarceration. In 2012, when Gray was just sixteen, he was charged and ultimately convicted on felony charges surrounding an incident at convenience store. [*Id*. at Page ID# 30]. Namely, Gray approached a patron of the convenience store upon their exit and demanded money. [*Id*.]. The patron refused Gray's request and sought to leave by getting into his vehicle. [*Id*.]. Gray then shot the patron through the front windshield of the vehicle, striking the patron in the upper body. [*Id*.].

While on pretrial release for these charges, Gray was also charged and eventually convicted of possession of crack cocaine and possession of a handgun by a minor. [*Id*.]. He also tested positive for use of marijuana during his pretrial release. [*Id*.].

In 2014, Gray was convicted and sentenced on both sets of charges. [*Id*.]. He was released from custody in early November 2022. [*Id*.]. Since his release, according to his mother who testified at the hearing, Gray was living again with his paternal grandmother where he lived prior

to his incarceration.  Gray applied to countless jobs but was unable to secure employment.  Per his mother, Gray was frustrated and discouraged.

Less than two months after being released, Gray was charged for the conduct at issue in this indictment.  As proffered by the United States, law enforcement was contacted by a citizen complaining of a vehicle driving recklessly on Lexington Road in Georgetown, Kentucky.  The caller gave a specific description of the vehicle that police quickly located.  When police first attempted to stop the vehicle for the traffic offense, the vehicle sped away resulting in a high-speed chase that law enforcement terminated a short time later.  Officers located the same vehicle some time later and a second high-speed chase ensued.  This time, the chase went from Georgetown into Lexington with speeds reaching 80 miles per hour in a 55 mils per hour zone, running two stop signs and a red light, hitting curbs, and swerving into oncoming traffic.  Eventually, the vehicle hit a guard rail causing Gray to exit the vehicle and flee on foot.  Police chase Gray down and apprehended him.  Upon capture and after searching his person and his vehicle, Gray was in possession of approximately 21 grams of suspected fentanyl, a firearm, a scale, and small bags allegedly used for drug distribution.

## B.   APPLICATION OF THE PRESUMPTION

Gray rebutted the presumption as to both risk of nonappearance and risk of danger. Through both proffer and the testimony of his mother, Kim Miles ("Miles"), Gray established that he is a lifelong resident of Lexington, Kentucky with several family members living in the area, including a girlfriend who is pregnant with his future child.  Gray offered specific conditions to address any argued danger including, inter alia, living on home incarnation with his paternal grandmother, being subject to drug testing, the removal of all firearms from the home, and his continued efforts to seek employment.  According to Miles, her son remains an immature adult

4

(given his lengthy incarceration since he was seventeen) who needs a job and some structure in his life to get him on the right track.

However, simply because Gray overcame his presumption, does not mean the Court ignores the impact of the presumption. "The presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 F. App'x. 363, 364, (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)).

## C.     RISK OF NONAPPEARANCE

The United States sought Gray's detention on the risk of nonappearance based upon three general arguments. First, Gray lacks any employment history. *United States v. Stidham*, No. 3:10-CR-79, 2010 WL 2639925, at *3 (E.D. Tenn. June 25, 2010) (finding that a defendant's long unemployment favors detention). The United States is not wrong in fact, but the Court highly discounts this argument given Gray's custodial status since he was seventeen. Second, Gray faces substantial penalties if convicted of these charges. *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee"). Again, the United States is accurate in the potential penalties here, but the Court struggles to discern any assets with which Gray could flee, although the risk of flight is merely one type of nonappearance risk. Third, the United States points to the high-speed chase that underlies the current circumstances. There, the Court has equal concerns.

In the end, however, the single flight instance with law enforcement is not enough to equal preponderant evidence. Gray has no prior history of failures to appear and no prior incidents of fleeing or evading arrest. *See United States v. Johnson*, No. 5:22-mj-01144, 2022 WL 2800242,

at *4 (N.D. Ohio July 18, 2022) (detaining a defendant who allegedly used a stolen SUV to break into an ATM to rob it and engaged in a high-speed chase (though as the passenger), where the defendant had convictions for assault on a public official, organized crime, and felony theft (pleaded down from aggravated kidnapping) in his criminal history); *United States v. Martin*, No. 22-20336, 2022 WL 16636924, at *2 (E.D. Mich. Nov. 2, 2022) (finding detention appropriate where a bank robbery led to a high-speed chase, traffic accidents, and a stand-off with law enforcement, when the instant bank robbery was the fifteenth in a string of robberies by that defendant, and he had seven prior failures to appear in court.).  He has lived in Lexington his entire life and has family roots and support here.

On balance, when taking all of this into account, the Court concludes the United States has failed to prove by a preponderance of evidence that Gray presents a serious risk of nonappearance if released pending trial.  As such, the BRA does not mandate detention based on the risk of nonappearance.

**D.   RISK OF DANGER**

The Court finds, however, that the United States has successfully shown by clear and convincing evidence that Gray's risk of danger proves a basis for pretrial detention under the BRA.

### 1.    Nature and Circumstances of the Offense

The first BRA factor is the "nature and circumstances of the offense charge, including whether the offense . . . involves . . . a controlled substance [or] firearm[.]"  18 U.S.C. § 3142(g)(1).  The nature and circumstances of Gray's current offenses—distribution of fentanyl and possession of firearms—strongly favors detention.  The nature and circumstances of Gray's charged crimes are serious and indicate an unquestioned high risk of dangerousness.  *See United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation" would

only increase it). The circumstances surrounding his arrest, the repeated high-speed chase that put members of the public at risk, only heightens that danger. Gray's charges and the circumstances surrounding his alleged crimes indicate a high risk of danger to the community, so this factor weighs heavily towards detention.

> 2. **Weight of the Dangerousness Evidence & History and Characteristics of the Defendant**

The second factor gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948. The third BRA factor considers the history and characteristics of the defendant. 18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release). Here, as in many cases following *Stone's* approach, these factors overlap. The Court thus analyzes them together.

Here, Gray is a young man with many years ahead of him. Unfortunately for him, Gray has engaged in repeated dangerous behavior during the few years behind him. At the age of sixteen, Gray shot another person while trying to rob him. While on pretrial release from that charge, he was arrested with crack cocaine and in possession of another firearm. He tested positive

for marijuana. *See* 18 U.S.C. § 3142(g)(3)(B) ("whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law"). And only a month and a half after being released from prison on those charges, he led law enforcement on two high-speed vehicle chases and a foot race while in possession of fentanyl and, again, a firearm. As Miles, his own mother, testified, Gray is a twenty-six-year-old man but practically remains the same sixteen-year-old kid he was prior to his lengthy incarceration and is trying to figure out the world. He has never held a job for very long, and he battles post-traumatic stress disorder and other mental health issues. *United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (observing that "the combination of the distribution of drugs and the illegal possession" of firearms presented a serious danger to the community). Much of Gray's problems are not his fault, but the Court cannot ignore the consequences of his choices.

In sum, both factors favor detention under these facts and circumstances.

3.   <u>Nature and Seriousness of the Danger Risk</u>

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In this case, this factor overlaps with consideration of the second BRA factor, the weight of the evidence against Gray indicating danger.

As the Court discussed in its analysis above, Gray's conduct when not incarcerated resulted in serious and dangerous actions against the interests of the public. *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics

activity if released") (collecting supportive cases).  The circumstances of Gray's arrest—a high-speed chase—and Gray's charged conduct in allegedly possessing with intent to distribute fentanyl and allegedly possessing a firearm in furtherance of his drug trafficking crime indicate that Gray would pose a serious threat of harm to the public if released at this juncture.  The nature and seriousness of the risk of danger to the community posed by releasing Gray is simply too great, and this final factor tips decidedly in favor of detention.

### 4.   Availability of Conditions Addressing Danger Risk

Finally, for the reasons discussed, the Court finds that Gray presents a risk of danger to the community if released based primarily on his repeated involvement with narcotics and firearms. While Gray asserts that any risk of danger can be sufficiently mitigated by release conditions such as electronic monitoring and home incarceration, the Court is unconvinced that any combination of available conditions would reasonably quell the risk of danger to the community that Gray's release would pose.  This is especially true given the nature of Gray's charged drug-trafficking crimes, which permits stationary involvement and discrete activity.  *See, e.g.*, *United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged heroin distribution scheme from his home). Moreover, Gray proposes being released to either his paternal grandmother or mother's residence and he suggests family members would ensure his compliance with any release conditions. However, the Court remains unconvinced that those arrangements could reasonably ensure community safety, as Gray was living with his paternal grandmother when he committed all the prior acts discussed above.

Accordingly, the Court finds that the United States has shown, by clear and convincing evidence, that no conditions can reasonably assure the safety of others or the community. Detention is therefore warranted based on Gray's risk of danger to the community.

### III.    <u>CONCLUSION</u>

In sum, the Court finds that the United States did not prove by a preponderance of the evidence that Gray is an irremediable nonappearance risk. But the United States proved by clear and convincing evidence that Gray poses a danger to the community that cannot be mitigated with release conditions. Therefore, the BRA mandates that Gray remain in detention pending trial.

Accordingly, the Court grants the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 20th day of April, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY

10