UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | Criminal Action No. 5: 23-040-DCR |
| V. | ) ) | |
| KEYON DACOLBI GRAY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Defendant Keyon Gray was sentenced on September 15, 2023, to a 117-month term of imprisonment following his conviction for possessing fentanyl with the intent to distribute it and possessing a firearm in furtherance of his drug trafficking crime. [Record No. 25] Facts relevant to the defendant's offenses are aptly summarized Gray's Presentence Investigation Report ("PSR"). It provides, in part:

> 7. On December 14, 2022, officers with the Georgetown Police Department were dispatched to a reckless driver in Scott County, Kentucky. Keyon Dacolbi Gray was identified as the driver of said vehicle. The vehicle was located by police but fled. A few moments later the vehicle was located and continued to flee from police, driving in the middle of the roadway and swerving back and forth. Officers utilized spike strips to stop the vehicle; however, Greg continued to flee even after the two front tires were spiked. Gray led police on a high-speed chase from Scott County to Fayette County, running multiple stop signs and striking multiple cars. At one point, Gray ran into a guardrail, crossed into the wrong lane of travel before regaining control and continuing to flee.
>
> 8. Eventually, Grey stopped the vehicle and began to flee on foot. The officer observed Gray had a fanny pack across his torso and was grabbing the fanny pack with his right hand. Officers gave the defendant verbal commands to get on the ground; however, Gray refused to get on the ground and was walking away from officers before one officer tackled the defendant to the ground. Gray was apprehended and officers retrieved the fanny pack in his possession. The fanny pack contained a Heckler & Koch, Model: P30SK, Cal.:

9x19mm, pistol, bearing serial number 21-004273, which was loaded and chambered. Additionally, the fanny pack contains suspected fentanyl and methamphetamine.

A federal grand jury later indicted Gray, charging him with possessing fentanyl with the intent to distribute it and possessing a firearm in furtherance of his drug trafficking crime. [Record No. 1] Gray entered a guilty plea to the two counts on June 2, 2023.

Pursuant to the 2021 United States Guidelines Manual, Gray's Total Offense Level was calculated as 19, based in part, on a two-level enhancement for recklessly created a substantial risk of death or serious bodily injury to others during his flight from police. Gray was placed in Criminal History Category IV, based on seven criminal history points. This calculation resulted in a non-binding guideline range of 46 to 57 months imprisonment for Count One, together with a 60-month sentence for Count Two, consecutive to Count One. After considering all relevant sentencing factors, the undersigned imposed a sentence at the top of the defendant's guideline range for Count One, and a consecutive 60-month sentence for Count Two. [Record No. 25]

Following sentencing, Defendant Gray became eligible for a sentence reduction pursuant to Amendment 821 (Part A) of the United States Sentencing Guidelines. However, the Court did not exercise its discretion under 18 U.S.C. § 3582(c)(2) to unilaterally reduce Gray's term of incarceration.[1] As explained in the Notice filed February 9, 2024,

---

[1] This statute provides that, "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, ***or on its own motion***, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." (Emphasis added.) 18 U.S.C. § 3582(c)(2).

> Gray's sentence reflects the shortest period of incarceration that would be sufficient to satisfy the purposes set forth in 18 U.S.C. § 3553(a), while being no longer than necessary to achieve those purposes. The nature and circumstances of the defendant's offenses do not support a sentence reduction. Gray led police on a high-speed pursuit through two counties, "driving in the middle of the roadway and swerving back and forth." [PSR ¶ 7] He disregarded multiple stop signs, struck multiple cars, drove into a guardrail, and crossed into the opposite lane of travel. [*Id.*] Gray's reckless conduct created a substantial danger to the public. After stopping the vehicle, Gray fled on foot despite commands from police to stop. Gray was eventually tackled while reaching for a fanny pack slung across his torso which was later found to contain loaded firearm, fentanyl, and methamphetamine. [*Id.* ¶ 8] Gray's flagrant disregard for the safety of others and the need to protect the public from his future potential crimes weighs against a sentence reduction.
>
> Gray's history and individual characteristics also caution against a sentence reduction. Gray was incarcerated on state-related charges from December 2014 through November 2022. [*Id.* ¶ 29] Six weeks following his parole date in November 2022, he committed the instant offenses. Most concerning, on one occasion, Gray shot a victim through the windshield of the victim's vehicle. [*Id.* ¶¶ 28, 29] Gray had demonstrated complete disregard for the law, as evidenced by his criminal history featuring continued possession of firearms and narcotics. The original sentence reflects a continuing need to protect the public. Reducing Gray's sentence would undermine this original (and continuing) objective.
>
> Serving the remainder of his sentence as originally imposed is also necessary to afford adequate specific deterrence to Gray and general deterrence to others. Gray's sentence continues to be sufficient, but not greater than necessary, to accomplish the purposes set forth in § 3553(a), and a sentence reduction would not be appropriate.

[Record No. 34]

Rather than moving for relief under 18 U.S.C. § 3582(c)(2), Gray now seeks a sentence reduction under another policy statement which has been given retroactive effect by the United States Sentencing Commission under 18 U.S.C. § 3582(c)(1)(A)(i). [Record No. 38]  Thus, the Court examines Gray's motion under a three-step inquiry." *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020).

First, Gray must show that extraordinary and compelling reasons warrant their requested reduction. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022). Second, the Court must confirm that any sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Finally, Gray must persuade the court to grant the motion after the court considers the § 3553(a) factors. *Id.* Courts "must deny a defendant's motion if the defendant fails to show either that extraordinary and compelling reasons warrant a sentence reduction or that the § 3553(a) factors support a reduction." *United States v. McKinnie*, 24 F.4th 583, 586 (6th Cir. 2022).

The Sixth Circuit "has predominantly defined what can constitute 'extraordinary and compelling' reasons for release by defining what circumstances cannot be 'extraordinary and compelling.'" *United States v. West*, 70 F.4th 341, 346 (6th Cir. 2023). While that precedent remains controlling in many instances, the Sentencing Commission's updated policy statement, as articulated in the expanded text of § 1B1.13(b), serves as a primary guidepost articulating the bounds of what it means to be "extraordinary and compelling."

In relevant part, U.S.S.G. §1B1.13(b) now allows for a sentence reduction for previously sentenced defendants to care for certain family members. This section identifies "extraordinary and compelling" reasons for reducing a term of imprisonment to include:

    (3)    FAMILY CIRCUMSTANCES OF THE DEFENDANT –

        (A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

        (B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (C)  The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

  (D)  The defendant establishes that circumstances similar to those listed in paragraph (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "**immediate family member**" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. §1B1.13(b)(3), p.s.

  According to Gray, his mother died in January 2024 while he has been incarcerated for his federal offenses, leaving behind a twelve-year-old sister. Thus, he *claims* to be the sister's only caregiver. He also contends that he has demonstrated "exemplary behavior" during employment while incarcerated and that his risk of engaging in future criminal conduct is "minimal and can be managed through strict terms of supervised release." [Record No. 38, p. 3]

  The United States opposes Gray's motion for compassionate release.[2] [Record No. 42] In addition to citing the defendant's conduct underlying his federal offenses, it notes that Gray has failed to explain why there are no other family members available to serve as caregivers for his minor sibling. In this regard, it points out that, at the time of sentencing, Gray's PSR reflected that there were two other adult maternal sisters living in the same city as his minor

---

[2] The United States concedes that the Court has jurisdiction to review the defendant's motion because the warden's response to his original submission was outside the 30-day window for responding to such requests for compassionate release. [*See* Record No. 42, p. 4.]

sibling (*i.e.*, Kamarri Gray and Kimarion Booker). [PSR, ¶ 39][3] But more importantly, the government correctly argues that even if the family circumstances presented were "extraordinary and compelling," early release would not be appropriate when evaluating the relevant factors of 18 U.S.C. § 3553(a). [Record No. 42, pp. 7-10]

In addition to the reasons outlined at pages 2-3 above, the undersigned agrees that the defendant's dangerousness has not been diminished because he has been employed through prison industries while incarcerated. Instead, the nature and extent of Gray's criminal history and pattern of disrespect toward authority indicate otherwise.

No relevant factor of § 3553(a) would be served by reducing Gray's sentence at this time. Instead, a reduced sentence would wholly depreciate the very serious nature of the defendant's federal offenses. And it bears repeating that the sentence originally imposed is the *shortest* period of incarceration that would be sufficient to satisfy the purposes set forth in 18 U.S.C. § 3553(a), while being no longer than necessary to achieve those purposes. Neither the nature and circumstances of the Gray's offenses nor his individual characteristics support a sentence reduction.[4]

---

[3] Gray will be twenty-eight years old later this month. His PSR indicates that he "has never been married and is currently single." [PSR, ¶ 40] At the time of his arrest, Gray reportedly lived with his maternal grandmother. He has significant substance abuse history involving alcohol, marijuana, cocaine, methamphetamine, and fentanyl. His only verifiable past employment is a one-month tenure with United Parcel Service in February 2023.

[4] Based on this determination, the Court need not address whether the statutorily required 60-month term of incarceration required by 18 U.S.C. § 924(c)(1)(A) can be evaded *via* a motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A).

Accordingly, it is hereby **ORDERED** that Defendant Gray's Motion for Compassionate Release or Sentence Reduction Pursuant to 18 U.S.C. 3582(c)(1)(A) [Record No. 38] is **DENIED**.

Dated: December 13, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky